UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEVIN LAPEER, *et. al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No.: 2:24-cv-00332-GMN-EJY |
| vs. | ) |
| | ) **ORDER ON** |
| CITY OF HENDERSON, *et. al.*, | ) **MOTIONS TO DISMISS** |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court are two Motions to Dismiss filed by Defendants Thedrick Andres, Anthony Branchini, the City of Henderson, and the Henderson Police Department, ("City Defendants"), (ECF Nos. 7, 8). Plaintiffs Officer Kevin LaPeer and his wife Lauren LaPeer filed Responses, (ECF Nos. 16, 22), and the City Defendants filed Replies, (ECF Nos. 26, 27).

Further pending before the Court is a Motion to Dismiss filed by Defendant Officer Hector Villa, (ECF No. 9). Plaintiffs filed a Response, (ECF No. 18), to which Officer Villa filed a Reply, (ECF No. 27).

For the following reasons, the Court **GRANTS** the City Defendants' 12(b)(6) Motion to Dismiss, **DENIES as moot** the City Defendants' Anti-SLAPP Motion to Dismiss, and **GRANTS in part** Officer Villa's Motion to Dismiss.

I.  **BACKGROUND**

This case arises out of the Henderson Police Department's ("HPD's") internal 20-month investigation into Plaintiff Officer LaPeer's alleged workplace misconduct. (*See generally* Compl., ECF No. 1-2). HPD placed Officer LaPeer on paid administrative leave on September 23, 2021, pending the outcome of the investigation. (*Id.* ¶ 17). HPD did not inform Officer LaPeer about the specific reason for the investigation, but Officer LaPeer believed he was put

on administrative leave after Defendant Officer Villa made an accusation that Officer LaPeer was "a bigot and a racist" who engaged in workplace misconduct. (*Id.* ¶ 18).  In January of 2022, HPD began conducting witness interviews. (*Id.*).  Two months later, Officer LaPeer received two "Notices of Administrative Investigation," which he alleged lacked an adequate summary of the misconduct he was accused of engaging in. (*Id.* ¶¶ 22–25).

Officer LaPeer claims that the investigation "resulted in a complete assassination" of his character because the investigation included interviews during which witnesses were asked suggestive questions about LaPeer's conduct and character. (*Id.* ¶¶ 32–33).  Witnesses suggested that Officer LaPeer "was a bigot, unprofessional, unethical, and a criminal." (*Id.* ¶ 34).  The last witness interview occurred on July 14, 2022, but Officer LaPeer remained on administrative leave until February 2023 when he was ordered to return to work. (*Id.* ¶¶ 38–40).

After returning to the HPD, Officer LaPeer was transferred to another unit. (*Id.* ¶ 42). Defendant Villa, Officer LaPeer's coworker, then sent an email to their other coworkers stating that Officer LaPeer insulted a colleague because of their Asian race and accused Officer LaPeer of "gross wrongdoing and criminal acts." (*Id.* ¶ 43).  Ultimately, on June 29, 2023, Officer LaPeer received correspondence from HPD's new Chief of Police stating that the allegations of misconduct were deemed to be unfounded. (*Id.* ¶ 45).  Despite this finding, Officer Villa continued to harass and intimidate LaPeer. (*Id.* ¶ 46).

Throughout the 20-month investigation, Officer LaPeer suffered emotional and mental distress leading to physical symptoms, including teeth grinding and jaw clenching, that eventually required surgery. (*Id.* ¶ 36).  The stress of the investigation also negatively impacted his marriage. (*Id.* ¶ 37).  Officer LaPeer filed this case in state court and brought claims for defamation against all Defendants, intentional infliction of emotional distress against all Defendants, civil conspiracy against all Defendants, a violation of NRS 289.060 against the HPD, and a 42 U.S.C. § 1983 claim against the City Defendants. (*Id.* ¶ 48-117).  Mrs. LaPeer

also brought a loss of consortium claim against the Defendants. (*Id.*). Defendants removed the case to federal court and filed the instant Motions to Dismiss.

## II.     LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.    DISCUSSION

The Defendants move to dismiss all claims against them for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and further move to dismiss Plaintiffs' state-law claims pursuant to Nevada's anti-SLAPP statute codified in NRS Chapter 41.  The Court will first address the City Defendants' argument that HPD and the individual Officers are improper parties to this suit. Once the proper parties are determined, the Court will evaluate whether Plaintiffs properly state claims for which relief can be granted.  Lastly, the Court will resolve Defendants' anti-SLAPP motions.

///

**A. Proper Parties to this Suit**

The City Defendants argue that the HPD, Mr. Andres, and Mr. Branchini are not proper parties. They argue that the HPD must be dismissed with prejudice because a government department may not be sued without statutory authorization. (City Mot. Dismiss 7:5–21, ECF No. 8). They further assert that Mr. Andres and Mr. Branchini are shielded by immunity in their individual capacities and that any liability stemming from their official capacity flows to the City itself. (*Id.* 8:19–9:3).

**1. Henderson Police Department**

Pursuant to Federal Rule of Civil Procedure 17(b), state law determines the issue of whether a department of a municipality may sue or be sued. *See, e.g.*, *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001). The HPD is a department of the City of Henderson, and "in the absence of statutory authorization, a department of the municipal government may not, in the department name, sue or be sued." *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996) (citing 64 C.J.S. Municipal Corporations § 2195 (1950)); *see also Cerros v. N. Las Vegas Police Dep't*, No. 2:06-cv-00647-LRH-PAL, 2008 WL 608641, at *9 (D. Nev. Feb. 29, 2008) ("Nevada does not grant authorization of a police department to sue or be sued.").

The parties have not provided statutory authority allowing the HPD to be sued in this case. Plaintiff argues that discovery is needed to determine whether the HPD is a department of the City, but discovery is unnecessary because police departments are generally immune from suit in this context. *See, e.g.*, *Martinez v. Las Vegas Metro. Police Dep't*, No. 2:15-cv-00883-MMD-NJK, 2017 WL 275603, at *2 (D. Nev. Jan. 20, 2017); *Williams v. Feldman*, No. 2:22-cv-01675-APG-NJK, 2023 WL 36190, at *1 (D. Nev. Jan. 3, 2023); *Schneider v. Elko Cnty. Sheriff's Dept.*, 17 F. Supp. 2d 1162, 1165 (D. Nev. 1998). Therefore, Plaintiffs have not demonstrated that the HPD is a proper defendant in this action, and the Court DISMISSES the

HPD from the suit with prejudice. Because Officer LaPeer's NRS 289.060 claim is alleged against only HPD, this claim is DISMISSED.

### 2. Defendants Andres and Branchini

Mr. Andres was the HPD Chief of Police at the time of the investigation, and Mr. Branchini was the HPD employee who oversaw the internal investigation. (Compl. ¶¶ 9–10). Plaintiffs allege only one paragraph against these Defendants, vaguely stating that they "ratified" Officer Villa's complaint and "suggested" that Officer LaPeer was racist and unethical and engaged in misconduct. (*Id.* ¶ 52). The City Defendants argue that the claims against Mr. Andres and Mr. Branchini should be dismissed regardless of whether they acted in their official or personal capacities. (City Mot. Dismiss 8:19–9:3).

"State officials sued in their official capacity for damages are not persons for purposes of § 1983." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Because Plaintiffs requests damages, the Court DISMISSES the claims against Andres and Branchini in their official capacities.

The Court further DISMISSES the state law claims because the Court must treat them as claims against the City. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25. "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Id.*

The Court does not immediately dismiss Plaintiffs' federal claim against Defendants Andres and Branchini in their personal capacity because § 1983 claims may be brought against a government officer in their personal capacity for actions taken under state law. *Id.* The Court will discuss whether Plaintiffs' properly stated a § 1983 claim below.

As to the state law claims brought against them in their personal capacity, Defendants Andres and Branchini argue that they should receive discretionary-function immunity. (City Mot. Dismiss 8:4–18).  Under NRS 41.032(2), actions cannot be brought against an officer or employee of the state or any of its agencies or political subdivisions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused."  A state actor raising this defense must show that (1) the questioned decision involved personal judgment, choice, or deliberation and (2) the decision was based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 168 P.3d 720, 722, 728–29 (Nev. 2007).

But immunity does not attach for actions taken in bad faith. *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991).  In this case, even if the actions taken as a part of an internal investigation were covered by discretionary-function immunity, Plaintiffs allege that the investigation was done in bad faith. (*See* Compl. ¶¶ 52–55).  The Court cannot yet determine as a matter of law whether Defendants acted in bad faith.  The only allegation mentioning these Defendants is a single paragraph in which Plaintiffs state that they ratified Officer Villa's conduct and falsely "suggested" to numerous people, through their conduct, that Officer LaPeer was unethical, unprofessional, racist, a bigot, and that he engaged in misconduct and criminal behavior. (*Id.* ¶ 52).  Although this brief allegation is sufficient to survive a motion to dismiss based on immunity, Defendants may re-allege this defense at the summary judgment stage.

### B. Motions to Dismiss for Failure to State a Claim

The Court will next determine whether Plaintiffs properly stated a claim against the remaining Defendants: the City of Henderson, Mr. Andres, Mr. Branchini, and Officer Villa.

#### 1. Defamation

All Defendants move to dismiss Officer LaPeer's defamation claim for failure to state a claim under Rule 12(b)(6).  Under Nevada law, a claim for defamation requires the Plaintiff to

allege "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005). "As a general rule, only assertions of fact, not opinion, can be defamatory." *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993). In determining whether a statement is actionable for the purposes of a defamation suit, the court must ask "whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Nevada Ind. Broadcasting Corp. v. Allen*, 664 P.2d 337, 342 (Nev. 1983). "The rule for distinguishing an opinion from an assertion of fact is whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001). "Words or conduct or the combination of words and conduct can communicate defamation." *K-Mart Corp.*, 866 P.2d at 282.

        a. City Defendants

Beginning with the City Defendants, Officer LaPeer alleges that everyone involved in the investigation made false and defamatory statements that Officer LaPeer was unethical, unprofessional, racist, a bigot, and that he engaged in misconduct and criminal behavior. (Compl. ¶ 52). According to Officer LaPeer, they did so by placing him on administrative leave without proper notice, dragging out the investigation for 20 months, and ignoring witness statements that did not corroborate the initial investigation, among other conduct. (Resp. to City Mot. Dismiss 13:16–28). This "imputed a lack of fitness for his work as a police officer, which constitutes a defamation per se." (*Id.*).

Considering the alleged conduct and statements in their entirety, the Court finds that it was not an assertion of fact regarding Officer LaPeer. The purpose of the internal investigation was to determine whether Officer Villa's complaints were, in fact, true. The act of conducting

an investigation, even if it dragged on for 20 months and was not done efficiently, does not demonstrate that the misconduct allegations were fact. The City Defendants necessarily had to ask witnesses whether they would describe Officer LaPeer as racist to investigate whether there was truth in Officer Villa's allegations. These questions cannot reasonably be construed as assertions of fact.

The Court thus DISMISSES Plaintiffs' defamation claim against City Defendants with leave to amend.[1] The City Defendants' internal investigation conduct is not an assertion of fact that Officer LaPeer was indeed a racist, bigot, or that he engaged in misconduct.

### b. Officer Villa

Officer LaPeer's defamation claim against Officer Villa is based on two separate communications. First, he asserts that Officer Villa made allegations to various other members of the HPD that Officer LaPeer was a bigot, racist, and engaged in workplace misconduct. (Compl. ¶ 18). Second, the day after Officer LaPeer returned to work, Officer Villa sent a work email with the subject line, "Det. LaPeer return to duty . . . let's talk." (*Id.* ¶ 43). This email stated that Officer LaPeer put his colleague down because of his Asian race and accused him of "gross wrongdoing and criminal acts." (*Id.*). Officer Villa makes two arguments to dismiss the defamation claim against him. First, he argues that his statements were opinion, not fact. (Villa Mot. Dismiss 9:21–11:9, ECF No. 9). Second, he claims that his communications are protected by the absolute litigation privilege. (*Id.* 11:10–12:26).

A reasonable person would likely understand that the allegations that Officer LaPeer engaged in workplace misconduct and made a specific statement based on race are statements

---

[1] Defendants also argue that Plaintiffs failed to identify an unprivileged publication to a third person because a privilege applies to any defamatory statement made. Defendants' arguments would be more appropriately presented at the summary judgment stage of the case because the Court does not yet have sufficient factual allegations with which to determine a privilege applies. Therefore, it is not certain that amendment would be futile.

of fact rather than statements of opinion.  Officer Villa's assertions that Officer LaPeer is racist and bigoted, however, are insufficient to state a defamation claim. *See Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 140 (2010) ("We agree that general statements charging a person with being racist, unfair, or unjust . . . constitute mere name calling and do not contain a provably false assertion of fact.").

Regarding Officer Villa's second argument, Courts have applied the absolute litigation privilege to both judicial and quasi-judicial proceedings before executive officers, boards, and commissions. *See Circus Circus Hotels*, 657 P.2d at 104.  A proceeding is quasi-judicial for purposes of the absolute litigation privilege if it "(1) provide[s] the opportunity to present and rebut evidence and witness testimony, (2) require[s] that such evidence and testimony be presented upon oath or affirmation, and (3) allow[s] opposing parties to cross-examine, impeach, or otherwise confront a witness." *Spencer v. Klementi*, 466 P.3d 1241, 1247 (Nev. 2020).  Citizen complaints with the police department alleging officer misconduct are absolutely privileged from prosecution for defamation. *Lewis v. Benson*, 701 P.2d 751, 752 (Nev. 1985).

The Court does not have enough information at this stage of the case to determine whether the absolute litigation privilege applies.  Taking the factual allegations in the Complaint as true, Officer Villa's initial accusations that Officer LaPeer engaged in workplace misconduct were sent to "various members of the HPD and others." (Compl. ¶ 18).  Plaintiffs do not allege that the complaint was also made to internal affairs, but the Court will make that reasonable inference because Plaintiffs allege that Officer Villa had a "history" of making unfounded workplace complaints. (*Id.* ¶ 19).  Although it is possible any formal complaint with HPD internal affairs would be privileged, the Court does not have enough information about HPD procedure to determine whether the *Spencer* factors are met.  Even though citizen complaints to police departments are privileged, Officer Villa does not provide case law

demonstrating that internal affairs complaints made by co-workers are categorically similarly privileged.

Regardless of whether a formal complaint to the internal affairs department would be privileged, Officer Villa's initial messages to other members of the HPD and the subsequent email sent after Officer LaPeer returned to work would likely not be. But as mentioned above, the Court does not have sufficient information to make this determination at the Motion to Dismiss stage, and thus Defendants may bring this argument at the Motion to Summary Judgment stage. The Court DENIES Officer Villa's request to dismiss the defamation claim against him.

### 2. Intentional Infliction of Emotional Distress

Defendants next move to dismiss Officer LaPeer's Intentional Infliction of Emotional Distress ("IIED") claim.

#### a. City Defendants

Officer LaPeer's claim for IIED against the City Defendants is based on their conduct during the investigation, including that (1) they did not start witness interviews until five months after he was put on administrative leave, (2) they continued the investigation despite knowing, or having reason to know, early in the investigation that the accusations were unfounded, and (3) they kept him on administrative leave for seven months after concluding the interviews. (Compl. ¶¶ 61–68). The City Defendants move to dismiss this claim based on an absolute privilege arising from a quasi-judicial proceeding and a failure to allege facts that constitute extreme and outrageous conduct. (City Mot. Dismiss 14:8–15:14). Because the Court has already determined that it is too early in the case to decide whether the absolute privilege applies here, and to what extent, the Court will focus on the City Defendants' second argument.

|   |   |
|---|---|
| 1 | To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show: (1) the defendant's conduct was extreme, outrageous, and committed with either the intention of, or reckless disregard for, causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) causation. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). |

Plaintiffs' alleged facts do not paint a picture of investigative conduct that was "utterly intolerable in a civilized community."  Personnel management activities such as hiring, firing, demotions, performance evaluations, and other similar acts, without more, are "insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011) (quoting *Janken v. GM Hughes Elec.*, 53 Cal. Rptr. 2d 741, 756 (Cal. 1996)).  Officer LaPeer's claims of being put on paid administrative leave for 20 months while multiple misconduct allegations were being investigated are based on actions that can be categorized as personnel management. So even if the City Defendants had improper motive or delayed too long in bringing Officer LaPeer back to work, the investigative conduct is not beyond all bounds of decency. *See King v. State of Florida*, 650 F. Supp. 2d 1157 (N.D. Fla. 2009) (finding that an employer reopening investigation into employee's conduct with the intent of preventing them from returning to work was not considered "outrageous" as required to state a claim for IIED).  Officer LaPeer continued to be paid over the 20-month investigation and HPD involved additional agencies such as LVMPD and the FBI, whose additional investigations would necessarily take time. Plaintiffs also do not cite case law in their Response demonstrating that any other court has found similar conduct to be sufficiently extreme and outrageous.

1    The Court DISMISSES this claim against the City Defendants with leave to amend. If
2 Plaintiffs choose to amend, they are instructed to clarify which particular defendant took which
3 action. *See Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *5
4 (N.D. Cal. May 5, 2011) (Rule 8 requires plaintiffs to "indicate which defendant was allegedly
5 responsible for which wrongful act and to provide well-pleaded factual allegations in support of
6 each cause of action").

7    b.   Officer Villa

8    Officer Villa similarly argues that his conduct was not extreme and outrageous. (Villa
9 Mot. Dismiss 13:13–20). While it is a closer call than the conduct of the City Defendants', the
10 Court finds that Officer LaPeer failed to allege facts sufficient to be regarded as "outside all
11 possible bounds of decency" and "utterly intolerable in a civilized community."

12    The Complaint alleges that Officer Villa "made several unfounded allegations against
13 Officer LaPeer to various members of the HPD and others, accusing Officer LaPeer of being,
14 amongst other things, a bigot and a racist, and accusing Officer LaPeer of engaging in
15 workplace misconduct." (Compl. ¶ 18). This statement lacks important details such as the
16 manner in which these allegations were made, how often they were made, and how many
17 people the allegations were made to. Without additional factual allegations, a vague statement
18 regarding Officer Villa spreading false allegations is not enough. *See Mitchell v. Fujitec*
19 *America, Inc.*, 518 F. Supp. 3d 1073 (S.D. Ohio 2021) (finding that defendant co-workers who
20 made false sexual harassment allegations against the plaintiff failed to state a claim for IIED,
21 even when the false allegations were shared with other co-workers in a social setting). The
22 only additional detail in the Complaint is that Officer Villa is "known by HPD as someone who
23 has a history of making unfounded or unsubstantiated workplace complaints." (Compl. ¶ 10).
24 But no detail is provided as to whether Officer Villa has been repeatedly making

25

unsubstantiated complaints against Officer LaPeer, or if these previous complaints were unrelated to the complaint at issue in this case.

Officer Villa's email allegation suffers from the same lack of detail. The Complaint states that Officer Villa sent a work email to "a number of individuals" without specifying who these individuals were or how many people were emailed. (*Id.* ¶ 43). Mere name calling and accusations of dishonesty are not sufficiently "extreme and outrageous," without more. *See McLeod v. Wal-Mart Stores, Inc.*, 515 Fed. Appx. 806, 809 (11th Cir. 2013) (explaining that false accusations of dishonesty in the workplace are common occurrences of ordinary life); *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) ("Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009).

Finally, Officer LaPeer alleges that Officer Villa targeted and harassed him at work, including an attempt to intimidate him in October 2023. (Compl. ¶ 46). Yet again, this vague allegation requires additional detail for the Court to find that the harassment was "outside all possible bounds of decency." Thus, Officer LaPeer's IIED claim against Officer Villa is DISMISSED with leave to amend.

### 3. Civil Conspiracy

Next, the Defendants move to dismiss the civil conspiracy claim for failure to allege an underlying tort and an agreement between the Defendants to commit the underlying tort. (City Mot. Dismiss 15:15–27); (Villa Mot. Dismiss 13:21–13:8). "To establish a claim for civil conspiracy, a plaintiff must show: (1) the commission of an underlying tort; and (2) an agreement between the defendants to commit that tort." *Eastwood v. Lehman Bros. Bank, FSB*, No. 3:09-cv-00656-LRH, 2010 WL 2696479, at *2 (D. Nev. July 2, 2010) (citing *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001)). Here, Plaintiffs fail to allege an underlying tort against

the City Defendants. And although Plaintiffs did allege an underlying defamation claim against Officer Villa, the Complaint lacks an allegation that another defendant agreed to conspire with Officer Villa. The Court therefore DISMISSES Officer LaPeer's civil conspiracy claim with leave to amend.

### 4. 42 U.S.C. § 1983

The City Defendants move to dismiss LaPeer's § 1983 claim because he failed to allege a constitutional violation. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Officer LaPeer alleges that he possessed a constitutionally protected right in his reputation and in his employment, which he was deprived of without due process of law in violation of the Fourteenth Amendment. (Compl. ¶¶ 99, 108). But harm to reputation, even if done by an officer of the state, does not constitute a deprivation of "liberty" or "property" as protected by the due process clause. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Nor does Officer LaPeer have a protected interest in continued at-will employment. *See Gabe v. Cnty. of Clark*, 701 F.2d 102, 103 (9th Cir. 1983); *see also Memphis Light, Gas & Wager Division v. Craft*, 436 U.S. 1, 11 (1978). Officer LaPeer's § 1983 claim against Defendants Andres and Branchini is therefore DISMISSED. Because he failed to allege a constitutional deprivation, his claim against the City of Henderson must also be DISMISSED. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (holding that municipal defendants can only be held liable if an underlying constitutional violation occurred). The Court grants Officer LaPeer leave to amend his claim to the extent he is able to allege a constitutional violation.

### 5. Loss of Consortium

Lastly, the Defendants move to dismiss Mrs. LaPeer's loss of consortium claim. A spouse may bring a loss of consortium claim based on a "single tortuous act which harms two

people by virtue of their relationship to each other." *Gen. Elec. Co. v. Bush*, 498 P.2d 366, 371 (Nev. 1972). If the underlying tort claim against the injured spouse fails, then the loss of consortium claim "must fail as well." *See Turner v. Mandalay Sport Entm't, LLC*, 180 P.3d 1172, 178 n.31 (Nev. 2008). Because the Court has dismissed all claims against the City Defendants, the Court must dismiss this claim as well.

The Court does not dismiss the loss of consortium claim against Defendant Villa. Defendant Villa's only argument for dismissal hinges on the dismissal of Officer LaPeer's underlying tort claims. (Villa Mot. Dismiss 14:10–17). But Officer LaPeer sufficiently alleged a defamation claim against Officer Villa. Therefore, Mrs. LaPeer's claim for loss of consortium survives.

**C. Anti-Slapp**

In addition to their 12(b)(6) motions to dismiss, the Defendants filed motions to dismiss Plaintiffs' state-law claims under Nevada's anti-SLAPP statute codified in NRS Chapter 41. (*See generally* Anti-SLAPP Mot. Dismiss); (Villa Mot. Dismiss). Because all claims against the City Defendants have been dismissed, their Anti-SLAPP Motion to Dismiss, (ECF No. 7), is DENIED as moot. The Court addresses only Officer Villa's anti-SLAPP arguments.

A district court analyzing a special motion to dismiss under Nevada's anti-SLAPP statute engages in a two-step analysis. NRS 41.660(3). First, the court "[d]etermine[s] whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern." *Id.* 41.660(3)(a). If the moving party fails to carry its burden at this first step, the inquiry ends and the case advances to discovery. *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019). If the moving party succeeds, then the court advances to the second step. There, the burden shifts to the non-moving party to show "with prima facie

evidence a probability of prevailing on the claim[s]." NRS 41.660(3)(b); *Coker*, 432 P.3d at 748.

### 1. Step One

Nevada statutes allow defendants to file a special anti-SLAPP motion to dismiss "to obtain an early and expeditious resolution of a meritless claim for relief that is based on protected activity." *Wynn v. Assoc. Press*, 542 P.3d 751, 754 (Nev. 2024). "The first step of Nevada's anti-SLAPP analysis holds two components: (1) determining if the non-moving party's claims for relief are based on a "communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern;" and, if so, (2) determining if such communication was in "good faith." NRS 41.660(3)(a). Nevada Revised Statute 41.637 defines four forms of communication that can satisfy the first component. The parties don't dispute that the second form of communication would apply in this case: a "[c]ommunication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity." *Id.* 41.637(2). Thus, if Officer Villa can demonstrate that his communications were made in good faith, the burden will shift to Plaintiffs.

Officer Villa has the burden of demonstrating that his communications were made in good faith, which requires that they were "truthful or made without knowledge of falsehood." NRS 41.637; *see also Panik v. TMM Inc.*, 538 P.3d 1149, 1154 (Nev. 2023). A sworn declaration as to the truthfulness of the information satisfies a defendant's initial showing. *Delucchi v. Songer*, 396 P.3d 826, 833 (Nev. 2017). To support his contention that his accusations made were in good faith, Officer Villa submits a sworn declaration. Interestingly, however, Officer Villa does not affirmatively say that his initial allegations were truthful or made without knowledge of falsehood. Instead, he states that the HPD has not informed him

that any statement he made was incorrect. (Villa Decl. ¶ 5, Ex. A to Villa Mot. Dismiss, ECF No. 9-1). He writes that Officer LaPeer did not quote a particular statement that he allegedly made but did not state that he was unaware of which statement, or statements, that Officer LaPeer was referring to. (*Id.*).

This declaration is not sufficient evidence of the good faith requirement, especially in light of Officer LaPeer's evidence to the contrary. For example, in the Investigation Report submitted by Plaintiff, Officer Villa alleges that he heard Officer LaPeer make a derogatory comment that all Mexicans should be killed. (Report at 93, ECF No. 21). But when HPD interviewed the five people who Officer Villa said were there and heard the comment, not one of them corroborated the allegation. (*Id.* at 103). On another occasion, Officer Villa stated that heard Officer LaPeer use the "n word" during a crime scene investigation and in front of multiple people. (*Id.* at 26). Eleven people were asked about the incident, and none of them said that they heard Officer LaPeer use the "n word." (*Id.* at 32–34, 82–85). Some of those interviewed, however, stated that they had heard Officer LaPeer use other racial or homophobic slurs. (*Id.*).

Thus, even if Officer Villa *had* made an initial showing of good faith, which the Court finds that he did not, LaPeer presented facts showing that there was a "genuine issue for trial" as to whether the statements were made in good faith. *Delucchi*, 396 P.3d at 833 (applying a summary judgment standard to a dispute regarding whether a communication was made in "good faith" under Nevada's anti-SLAPP statute). Officer LaPeer provides evidence demonstrating that some of Officer Villa's allegations were never corroborated by witnesses. Therefore, because Officer Villa fails to meet his good faith burden and Officer LaPeer presents evidence to the contrary, his Anti-SLAPP Motion to Dismiss is DENIED.

## IV.         CONCLUSION

**IT IS HEREBY ORDERED** that the City Defendants' 12(b)(6) Motion to Dismiss, (ECF No. 8), is **GRANTED**. Plaintiffs shall have 21 days from the date of this Order to file an amended complaint consistent with this Order. Failure to file an amended complaint by this date will result in the Court dismissing Plaintiffs' claims with prejudice. The Henderson Police Department and Defendants Andres and Branchini in their official capacity, are dismissed with prejudice. Plaintiffs are granted leave to amend all claims against the City of Henderson and Defendants Andres and Branchini in their personal capacity.

**IT IS FURTHER ORDERED** that the City Defendants' Anti-SLAPP Motion to Dismiss, (ECF No. 7), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant Officer Villa's Motion to Dismiss, (ECF No. 9), is **GRANTED in part and DENIED in part.** Plaintiffs' defamation and loss of consortium claims survive, and all others are dismissed with leave to amend.

**DATED** this __1__ day of August, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT